UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
                                                :
IN RE: SUPREMA SPECIALTIES, INC., et al.,       :
                                                :
                    Debtors.                    :
------------------------------------------------X
                                                :
SPECIAL SITUATIONS FUND III, L.P., and          :
SPECIAL SITUATIONS CAYMAN FUND, LLP,            :
                                                :      05 Civ. 208 (TPG)
                    Appellants,                 :
                                                :          **OPINION**
        against -                               :
                                                :
KENNETH P. SILVERMAN, ESQ., The Chapter 7       :
Trustee of the Estate of Suprema Specialties,   :
Inc., et al.,                                   :
                                                :
                    Appellee.                   :
------------------------------------------------X

Appellants Special Situations Fund III, L.P., and Special Situations Cayman Fund, LLP, appeal from a December 1, 2004 Order by Judge Blackshear of the Bankruptcy Court approving a settlement between the Trustee and two insurers. Appellee Kenneth Silverman, the Chapter 7 Trustee of Suprema Specialties, Inc., et al., moves to dismiss the appeal.

The motion is denied.

BACKGROUND

Suprema Specialties, Inc., et al., ("Suprema") was a manufacturer of all-natural, gourmet Italian cheeses. Suprema's stock was publicly-traded.

Suprema filed for bankruptcy in early 2002 following the discovery of a massive accounting fraud.

This accounting fraud occurred during the years 1996 to 2002. Members of Suprema's management team and three principals of Suprema's largest customers arranged sham transactions between Suprema and those companies. The sham transactions were so numerous that around $700 million, or approximately 87%, of Suprema's sales over that time period were either fictitious or inflated. At least one member of Suprema's management team, along with three others, later pled guilty to criminal charges of securities fraud and bank fraud.

Suprema filed for bankruptcy under Chapter 11 on February 24, 2002. On March 20, 2002 the Bankruptcy Court converted the case to liquidation proceedings pursuant to Chapter 7, and appointed Silverman as the Trustee.

Appellants

Appellants are institutional investors who purchased millions of dollars of now-worthless Suprema stock. However, Appellants have not filed a Notice of Interest with the Bankruptcy Court. They are not creditors of Suprema, and have not filed a Proof of Claim with the Bankruptcy Court.

Appellants are pursuing federal statutory and state common law claims against certain of Suprema's directors, officers, and employees. Appellants seek to hold these persons liable for the false and misleading statements contained in Suprema's public filings. Appellants seek more than $25 million in damages. Appellants' claims are currently being asserted in an action in the United States District Court for the District of New Jersey captioned <u>Special Situations Fund III, L.P., et al. v. Mark Cocchiola, et al.</u>, No. 2:02 Civ. 3099. Although those claims were dismissed by the District Court, Special Situations' appeal is currently pending before the Third Circuit.

There is also a class action pending against certain of Suprema's directors, officers, and employees in the United States District Court for the District of New Jersey captioned <u>In re Suprema Specialties, Inc., Securities Litigation</u>, No. 02-168. That action apparently raises similar claims as the above-mentioned action, but it is not clear if Appellants are members of the putative class. Like the action brought solely by Appellants, the class action was dismissed by the District Court, and an appeal is currently pending before the Third Circuit.

The Insurance Policies

Suprema maintained three directors and officers liability insurance policies (the "D&O Policies"). The D&O Policies covered Suprema as the

-3-

"Named Entity" as well as certain "Insured Persons", who were officers and directors of Suprema. The first policy was an Executive and Organization Liability Insurance Policy with National Union Fire Insurance Co. in the amount of $7.5 million (the "Primary Policy"). The second was an Excess Directors and Officers Liability Insurance Policy with Royal Indemnity Company (the "First Excess Policy") in the amount of $7.5 million in excess of the amount covered by the Primary Policy. The third was an Excess Insurance Policy with National Union Fire Insurance Co. in the amount of $10 million in excess of the amount covered by the Primary Policy and the First Excess Policy.

On January 21, 2004 the Trustee commenced ten insider adversary proceedings in the Bankruptcy Court against insiders and officers and directors of Suprema. Those proceedings seek to recover damages for, among other things, breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, waste, mismanagement, and fraudulent conveyances.

In a letter dated April 8, 2004, National Union advised those directors and officers that it was entitled to rescind the D&O Policies because they were issued in reliance on materially false and misleading representations by the insureds. National Union specifically alleged that, in deciding to issue the policies, it had relied on the 10Ks, 10Qs, and 8Ks filed by Suprema with the SEC. National Union concluded that since those forms materially

misstated Suprema's financial condition, it was entitled to rescind the policies.

In response to that letter, on June 15, 2004 the Trustee initiated an adversary proceeding against National Union, Royal Indemnity, and the ten defendants named in the January 21, 2004 action. The Trustee sought a declaratory judgment that (1) the D&O Policies and the proceeds thereof are the property, in whole or part, of the Debtor's estate; (2) as property of the Debtor's estate, the D&O Policies may not be rescinded other than through a proceeding in the Bankruptcy Court in which the Court grants permission to rescind the D&O Policies; (3) there is no legal or factual basis for rescinding the D&O Policies; (4) the claims asserted in the Class Action and Special Situations Actions are covered by the D&O Policies; and (5) the claims asserted in the Insider Adversary Proceedings are covered by the D&O Policies. National Union and Royal Indemnity asserted counterclaims seeking the rescission of the D&O Policies.

The Trustee, National Union, and Royal Indemnity then entered into negotiations in an attempt to resolve the issues raised in the Trustee's declaratory judgment action. Following the negotiations, the Trustee, National Union, and Royal Indemnity agreed to rescind ab initio the D&O Policies in exchange for (1) a payment of nearly $7.5 million from National Union to the Trustee, and (2) a payment of $6.4 million from Royal Indemnity to the Trustee.

The amount to be paid by National Union and Royal Indemnity to the Trustee is roughly 86 times greater than the amount of premiums that Suprema paid for the D&O Policies.

Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, the Trustee moved for an order approving the settlement. Several of the directors and officers filed timely objections. Appellants did not file any objection, written or otherwise, at that time. On November 22, 2004 the Bankruptcy Court held a hearing regarding the Trustee's motion to approve the settlement. Appellants did not appear at that hearing. The hearing was continued to November 23, and then further continued to December 1, 2004.

Appellants interposed their objection on November 30, 2004. Their objection echoed the objections raised by the various directors and officers. The objections of many, but not all, of the directors and officers were resolved and withdrawn prior to the December 1 hearing. The directors whose objections to the settlement were not resolved or withdrawn prior to the December 1 hearing were Randolph Acosta, Paul DeSocio, and Barry Rutcofsky. At that hearing, the Court heard the objections raised by Acosta, DeSocio, and Rutcofsky, as well as the objection raised by Appellants. Following argument on the settlement motion, Bankruptcy Judge Blackshear overruled the remaining objections, granted the Trustee's motion, and

approved the settlement.

The Instant Appeal

Appellants filed their notice of appeal on December 7, 2004. On December 17, 2004 Appellants filed their Designation of Items to be Included in the Record on Appeal and Statement of Issues to be presented on Appeal. In a letter to the Court dated January 27, 2005, Appellants requested an extension of time to file their opening brief. The Court approved that request by endorsement on February 4, 2005 and gave Appellants until March 3 to file their opening brief. Following a second extension of time, Appellants filed their opening brief on March 18, 2005.

Appellants claim that the D&O Policies provide coverage for any "actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission, or act ... with respect to any Executive of an Organization, by such Executive in his or her capacity as such or any matter claimed against such Executive solely by reason of his or her status as such." Appellants also claim that the D&O Policies include a priority of payments provision that bars payment to the Debtor's estate until after payment of all other covered claims against the Insured Individuals. They argue that the settlement nullifies the D&O Policies' priority-of-payment provisions, which granted Appellants priority over the Debtor's estate as to any payments for claims covered by the D&O

Policies. Under their theory, the Trustee's rescission of the D&O Policies in return for a payment to the Debtor's estate is merely a means of evading the priority-of-payment provisions and allowing the Debtor's estate to receive an amount of money that is essentially the bulk of the insurance proceeds.

Acosta, DeSocio, and Rutcofsky also filed a notice of appeal from the Bankruptcy Court's order, and moved in that court for a stay pending appeal pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure. The Bankruptcy Court denied their application for a stay. However, on January 19, 2005 District Judge Casey reversed the Bankruptcy Court and granted a stay. In re Suprema Specialties, Inc., M-47 (RCC). The appeal of Acosta, DeSocio, and Rutcofsky has now been assigned to the undersigned judge.

## DISCUSSION

The Trustee raises four arguments why the appeal should be dismissed: (1) Appellants do not have standing to appeal the Bankruptcy Court's order; (2) Appellants' objection in the Bankruptcy Court was not timely; (3) the appeal is moot because the Bankruptcy Court's order has not been stayed; and (4) Appellants did not timely file their brief on appeal.

The Trustee's fourth argument is clearly unavailing. Pursuant to

extensions of time approved by this court, Appellants' brief on appeal was timely filed. The court now turns to the Trustee's remaining arguments.

Appellants' Standing to Appeal the Bankruptcy Court's Order

In order to have standing to appeal an order of the Bankruptcy Court, an appellant must be "directly and adversely affected pecuniarily by the challenged ruling." In re Gucci, 126 F.3d 380, 388 (2d Cir. 1997). Appellants argue that the Bankruptcy Court's order effectively takes away the liability insurance which would otherwise cover their claims against Suprema's directors and officers. Although the Trustee points out that Appellants' lawsuit against the directors and officers has been dismissed by the District Court, there remains a pending appeal before the Third Circuit. This court finds that the Bankruptcy Court's ruling from which Appellants now appeal has a sufficient pecuniary effect on Appellants to give them standing.

The Timeliness of Appellants' Objection

The Bankruptcy Court has the discretion to consider late-filed objections. See In re Combined Metals Reduction Co., 557 F.2d 179, 202 (9th Cir. 1977). The Trustee argued in the Bankruptcy Court that Appellants' objection should not be considered. However, the Bankruptcy Court heard Appellants' objection and, in so doing, did not abuse its discretion. There is

therefore no issue about timeliness which would prevent this court from hearing the present appeal.

The Failure to Seek a Stay

Appellants did not seek a stay of the Bankruptcy Court's order. At times, such a failure can moot an appeal. However, Acosta, DeSocio, and Rutcofsky sought and obtained a stay of the disbursement of the settlement proceeds. Therefore, it appears that the entirety of the settlement proceeds is currently held by the Trustee. This court can, if it later rules in Appellants' favor on merits, return the parties to the status quo ante by reversing the Bankruptcy Court's approval of the stipulation and ordering the return of the settlement proceeds to National Union and Royal Indemnity. Thus, the appeal is not moot. See In re Burger Boys, Inc., 94 F.3d 755, 760 (2d Cir. 1996).

CONCLUSION

The Trustee's motion to dismiss the appeal is denied.

SO ORDERED.

Dated:   New York, New York
         August 25, 2005

_____
THOMAS P. GRIESA
U.S.D.J